# CAROLYN A. ALANSKY AND ANOTHER v. NORTHWEST AIRLINES, INC.[1]

June 13, 1947.

No. 34,383.

[1]Reported in 28 N. W. (2d) 181.

*Robert J. McDonald, Donald T. Barbeau, William H. DeParcq,* and *Chester D. Johnson,* for appellants.

*Victor E. Anderson,* United States Attorney, and *Linus J. Hammond,* Assistant United States Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal from an order overruling plaintiffs' combined "demurrer * * * and motion to strike certain portions of defendant's answer," wherein the trial court certified that the questions presented by the *demurrer* "are important and doubtful."

The complaint in substance alleged that for some time past defendant had been engaged in operating a transcontinental airline as a common carrier of passengers, mail, baggage, and express for hire; that on December 8, 1945, because of the negligence of defendant and its employes in operating one of defendant's planes en route from Newark, New Jersey, to Seattle, Washington, and because of defendant's failure to have said plane in good repair at that time, the described plane crashed to the ground near Billings, Montana, and that as a result thereof plaintiffs' decedent, who was then a passenger thereon, met death.

An answer was interposed on behalf of defendant by Victor E. Anderson, United States Attorney, and Linus J. Hammond, Assistant United States Attorney. Paragraph I thereof alleged that said counsel appeared on defendant's behalf upon the direction of the attorney general of the United States because the interests of the United States were involved in the action, but that nothing in such answer or such appearance of counsel should be construed as an appearance by the United States or as its consent to be sued herein.

Paragraphs III to VIII, inclusive, of the answer set forth specific denials to each of the material allegations of the complaint, thereby placing in issue the allegations therein that defendant was a common carrier for hire at the time of the accident; that plaintiffs' decedent was then its passenger; that defendant's employes were in charge of the operation of the plane and that they and defendant at that time were guilty of negligence causing the accident; and that the plane was not in good repair and defendant was responsible therefor and had knowledge thereof at the time in question.

Following the specific denials, defendant pleaded a general denial controverting *all* allegations of the complaint except those admitted or qualified in the answer.

Paragraphs IX to XV, inclusive, of the answer in substance further alleged:

That at the time of the accident defendant had entered into an agreement with the United States pursuant to an executive order of the President of the United States, No. 8974 (1941 Supplement, Code of Federal Regulations, Title 1-7, page 315), to perform certain services for the United States in the prosecution of the war, and whereunder it was acting solely as the agent of the United States, without authority or control over the flight in question or the pilots in charge thereof; that said contract provided:

"Whereas, the contractor is an air carrier engaged in air transportation under the Civil Aeronautics Act of 1938; and

"Whereas, the parties heretofore have entered into certain contracts which, *with all instruments amending, modifying and supple-*

*menting the same,* are hereinafter sometimes referred to as the *'basic contracts,'* and

\* \* \* \* \*

"Whereas, in order to expedite and further the prosecution of the war effort, \* \* \* the parties desire to provide by this contract for performance by the contractor of services of the nature and kind capable of being performed by it during the term of this contract; \* \* \*.

\* \* \* \* \*

"Now, therefore, \* \* \* it is agreed as follows:

\* \* \* \* \*

"(a) The contractor, whenever directed by service orders issued by the contracting officer in accordance with this contract, shall perform the following:

"(1) Air transport services between points within the United States, points without the United States, and points within and without the United States; \* \* \*."

That pursuant to this contract on August 25, 1945, the United States issued a special service order directing defendant as follows:

"1. Pursuant to the terms of the above numbered contract, contractor is hereby directed to perform the following services:

"(a) Contractor shall furnish air transport services for the transportation of passengers authorized by the government between Newark Airport, Newark, N. J., and Paine Field, Seattle, Washington, along contractor's established transcontinental routes. Such transport services shall not be required to exceed the operation of seventeen (17) C-47B type government airplanes and shall not be required to exceed five (5) round trips per day.

\* \* \* \* \*

"6. The extent and character of the services to be performed by contractor under this service order and the manner of performance thereof shall be subject to the general supervision, direction, control and approval of the following, who is the person designated under Article 1 (e) of the above numbered contract: Commanding General, Air Transport Command."

That, in addition to its regular compensation for services thereunder, defendant was to be reimbursed by the United States for reasonable direct costs incurred, including

"(2) Losses or expenses (including settlements made with the written consent of the contracting officer) not compensated by insurance or otherwise and found and certified by the contracting officer to be just and reasonable, actually sustained by the contractor in defense and/or discharge of such claims of others (including subrogees) on account of death or bodily injury of persons or loss or destruction of or damage to property as may arise out of or in connection with the performance of the services under this contract; * * *."

That on December 8, 1945, pursuant to the aforesaid agreement, the United States through its agents delivered to defendant at Newark, New Jersey, one C-47 Army Air Force airplane owned by the United States and directed defendant to use the same for the purpose of transporting United States army personnel, consisting of 12 officers and men, including plaintiffs' decedent, from Newark, New Jersey, to Seattle, Washington.

That during the course of the flight so ordered, while preparing to land at Billings, Montana, on the aforesaid date, said plane crashed to the ground and was entirely demolished, and plaintiffs' decedent killed as a result thereof.

That said accident was without the fault, negligence, or dereliction of defendant or any of its agents or servants and could not have been avoided; that the plane was under the control and supervision of the army air forces at the time and maintained and repaired by the United States; that decedent was a soldier in the United States army and on duty as such and under orders of his lawful superiors; that defendant at the time was acting as agent of the United States and subject to the control and direction of the United States secretary of war and his agents.

Subsequently, plaintiffs served upon defendant an instrument entitled, "Demurrer and plaintiffs' motion to strike certain portions of defendant's answer." By its provisions, the demurrer challenged

(1) paragraph I of the answer, which alleged that defendant's counsel appeared herein on behalf of defendant because the interests of the United States were involved; (2) paragraphs IX to XV, inclusive, thereof, which alleged the agreement between defendant and the United States and defendant's disclaimer of liability herein by virtue thereof; and (3) the signature thereon of defendant's counsel as "United States Attorney" and "Assistant United States Attorney," respectively.

The answer, including the described matters and allegations, was challenged by the demurrer on the following grounds:

"1. That the same does not state facts sufficient to constitute a defense;

"2. That the same is incompetent, irrelevant and immaterial;

"3. That the same is sham and frivolous;

"4. That the same is highly prejudicial and would deprive or tend to deprive plaintiffs of a fair and impartial trial by jury;

"5. And upon such further grounds as may be urged and called to the court's attention at the time of the hearing."

Following the demurrer, in the same instrument plaintiffs notified defendant as follows:

"You, and each of you, will further take notice that if the court should in whole or in part overrule plaintiffs' demurrer, then plaintiffs will move the above named court for its order striking out all of the above portions of defendant's answer hereinbefore referred to upon the grounds and for the same reason set forth in said demurrer."

The trial court subsequently made its order overruling the demurrer and denying the motion to strike, certifying therein that the questions presented by the *demurrer* were important and doubtful, and this appeal followed.

■ We are limited in this appeal to a consideration of that portion of the order overruling the demurrer, since it is well settled that the order denying plaintiffs' motion to strike is not appealable. Lovering v. Webb Pub. Co. 108 Minn. 201, 120 N. W. 688, 121 N. W.

911; Wade v. Citizens State Bank, 158 Minn. 231, 197 N. W. 277. If plaintiffs still deem certain of the allegations in the answer incompetent, irrelevant, sham, frivolous, or otherwise objectionable at the time of trial, they may object to the admission of evidence thereunder, and thus test the question of the relevancy or materiality thereof, notwithstanding the denial of their motion to strike the objectionable allegations. Steenerson v. G. N. Ry. Co. 64 Minn. 216, 66 N. W. 723.

■ While plaintiffs' demurrer to the answer is based upon five separate grounds, only the first one—that the answer does not state facts sufficient to constitute a defense or counterclaim—is authorized by statute and can be considered here. M. S. A. § 544.08; Campbell v. Jones, 25 Minn. 155.

■ A demurrer to an answer based upon the statutory ground thus authorized is sometimes designated a general demurrer. With reference thereto, the only question for determination here is whether, assuming the facts alleged in the answer to be true, enough has been stated therein to constitute a defense to plaintiffs' cause of action. Armstrong v. Hinds, 9 Minn. 341 (356) ; First Nat. Bank v. How, 28 Minn. 150, 9 N. W. 626; First & Lumbermen's Nat. Bank v. Buchholz, 220 Minn. 97, 18 N. W. (2d) 771; Marquette Trust Co. v. Doyle, 176 Minn. 529, 224 N. W. 149.

■ Such a demurrer does not bring up for consideration the materiality or relevancy of the allegations in the answer or pleading, nor does it constitute a challenge thereto because of redundancy. Fish v. Berkey, 10 Minn. 161 (199) ; Erickson v. Child, 87 Minn. 487, 92 N. W. 1130.

■ It is equally well settled that such a demurrer must lie to the whole of a defense pleaded rather than to only a portion thereof, Knoblauch v. Foglesong, 38 Minn. 459, 38 N. W. 366; Pratt v. Sparkman, 42 Minn. 448, 44 N. W. 663; and, while it is not effective merely because two or more consistent defenses are pleaded but not separately stated, Campbell v. Jones, 25 Minn. 155, a separate defense not separately pleaded, which fails to allege facts sufficient to constitute

any valid defense, may be attacked by demurrer. Sandberg v. Clausen, 134 Minn. 321, 159 N. W. 752.

■ We have frequently held that denials, either specific or general, when properly pleaded and directed in defense, place in issue the material allegations to which they are directed in a complaint, and, accordingly, that an answer consisting thereof is not subject to demurrer. First Nat. Bank v. How, 28 Minn. 150, 9 N. W. 626, *supra;* C. N. Nelson Lbr. Co. v. Pelan, 34 Minn. 243, 25 N. W. 406; Hodgson v. Mather, 92 Minn. 299, 100 N. W. 87; United States F. & G. Co. v. Falk, 214 Minn. 138, 7 N. W. (2d) 398. Likewise, the rule is well settled that whatever tends to controvert directly the material allegations of a complaint may be shown under a general denial. German-Am. Bank v. White, 38 Minn. 471, 38 N. W. 361; Hanson v. Diamond I. Min. Co. 87 Minn. 505, 92 N. W. 447.

■ With these rules in mind, it is obvious that the specific and general denials set forth in defendant's answer have placed in issue material allegations of the complaint; hence the answer constitutes a valid defense to plaintiffs' cause of action. Thereunder, defendant may submit evidence, if available, to establish that at the time of the accident it was not the owner of the plane or responsible for its maintenance or repair; that it had no authority or control over such plane or its pilots; that it was acting only as agent for the United States and not as a common carrier for hire; and that it owed no duty or responsibility to plaintiffs' decedent as a passenger or otherwise. A valid defense having been stated as above indicated, the court properly overruled the demurrer thereto.

■ In addition to the denials therein pleaded, the answer affirmatively set forth in paragraphs IX to XV, inclusive, thereof portions of a contract between defendant and the United States whereunder defendant alleged that the United States or its agents had full direction and control of the flight in question, the plane used therein, and the pilots in charge thereof; and whereunder, as defendant further alleged, it was therein acting solely as agent of the United States, under the direction of officers of the United States army.

Plaintiffs assert that the plain language of the contract pleaded and referred to in paragraphs IX to XV, inclusive, of the answer clearly establishes that at the time of the accident defendant was an independent contractor with full authority and control over the pilots and the plane involved therein; that such paragraphs establish conclusively that defendant's employes caused the plane to crash and that defendant's negligence was responsible therefor; hence that said paragraphs present no defense, and accordingly the demurrer thereto and the motion to strike the same should have been sustained.

We have heretofore indicated that the trial court's order denying the motion to strike is not appealable and hence not before us. We have also made it clear that a demurrer must challenge a defense in its entirety rather than only a portion thereof. We have determined herein that a valid defense is found in the specific and general denials pleaded in the answer. It is clear, in addition, that under the additional allegations set forth in paragraphs IX to XV of the answer that defendant may submit evidence sufficient to constitute a valid defense, and hence that the demurrer thereto was properly overruled. Sandberg v. Clausen, 134 Minn. 321, 159 N. W. 752.

It should be noted, however, that even though the contract and facts pleaded in said paragraphs set up a valid defense, we cannot now determine therefrom alone the relationship that existed at the time of the accident between defendant and the United States, or between defendant and the pilots of the plane; nor defendant's responsibility otherwise in connection with the accident. This rule is expressed in Anderson v. Foley Bros. 110 Minn. 151, 153, 124 N. W. 987, 988, as follows:

"* * * The law on this subject is well settled. The contracts themselves do not necessarily govern the question, and the relation of respondeat superior may depend entirely upon the conduct of the parties."

See, also, Aldritt v. Gillette-Herzog Mfg. Co. 85 Minn. 206, 88 N. W. 741; Brown v. Douglas Lbr. Co. 113 Minn. 67, 129 N. W. 161; Wallace v. Pine Tree Lbr. Co. 150 Minn. 386, 185 N. W. 500.

■ The authorities hereinbefore set forth clearly indicate that the demurrer does not constitute a challenge to the signatures of defendant's counsel as United States attorney and assistant United States attorney, respectively. It is to be noted that they are designated as attorneys for defendant. The right of such attorneys to appear for defendant herein upon the direction of the attorney general of the United States, where the interests of the United States are involved although it is not a party, without such appearance constituting a consent by the United States to be sued or an appearance by it, appears to be well settled. 5 USCA, § 310; United States v. Hall (9 Cir.) 145 F. (2d) 781, certiorari denied, 324 U. S. 871, 65 S. Ct. 1016, 89 L. ed. 1425; Carr v. United States, 98 U. S. 433, 25 L. ed. 209; Stanley v. Schwalby, 162 U. S. 255, 16 S. Ct. 754, 40 L. ed. 960. The descriptive words designating the titles of the attorneys would appear to be of no materiality insofar as the issues presented by the pleadings are concerned. Plaintiffs assert that such words are inserted for the purpose of influencing or prejudicing the jury at the trial. It is doubtful whether the jury will be cognizant of the signatures of defendant's counsel on the pleadings. The United States is not a party to the action, and the trial should be confined to the relevant and material issues presented by the pleadings; plaintiffs' counsel, by the use of timely and proper objections, may thus restrict it. The fact that defendant is represented by the United States attorney has no bearing on the material issues and should be kept from the jury. However, this question is not before us at the present time.

Affirmed.

PETERSON, JUSTICE (concurring specially).

I concur in the opinion, except that I think that, inasmuch as we have had occasion to refer to the fact that the United States attorney appears for defendant, we should make plain our position with reference to bringing that fact before the jury upon the trial.

The decision settles the question as to whether or not the United States attorney has a right to appear for defendant. Such appearance obviously has nothing to do with the merits. There could be no

purpose in referring upon the trial to the fact of such appearance, except to influence the jury by a matter having nothing to do with the merits of the case. Any attempt to get before the jury the fact that defendant is represented by the United States attorney should not be countenanced and, if made, should be deemed misconduct and dealt with accordingly.

MATSON, JUSTICE (concurring specially).
I join in the concurring opinion of Mr. Justice Peterson.

